



PREET BHARARA
United States Attorney for the
Southern District of New York
BY: JEFFREY ALBERTS
300 Quarropas Street, Third Floor
White Plains, NY 10601
(914) 993-1965

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,           :

        Plaintiff,           :    **VERIFIED COMPLAINT**

   - v. -                                       :

$6,637,076.23 IN UNITED STATES CURRENCY  :   10 Civ.
FUNDS PREVIOUSLY ON DEPOSIT AT
GOLDWATER BANK IN SCOTTSDALE,        :
ARIZONA, IN ACCOUNT NUMBER 160201,
HELD IN THE NAME OF ALLIED WALLET,   :
INC., AND ALL PROPERTY TRACEABLE
THERETO,                              :

$950,000 IN UNITED STATES CURRENCY   :
FUNDS PREVIOUSLY ON DEPOSIT AT
GOLDWATER BANK IN SCOTTSDALE,        :
ARIZONA, IN ACCOUNT NUMBER 160200,
HELD IN THE NAME OF ALLIED WALLET,   :
INC., AND ALL PROPERTY TRACEABLE
THERETO,                              :

$1,232,540.19 IN UNITED STATES CURRENCY :
FUNDS PREVIOUSLY ON DEPOSIT AT
ALLIANCE BANK OF ARIZONA, IN ACCOUNT :
NUMBER 8010200536, HELD IN THE NAME OF
ALLIED SYSTEMS, INC., AND ALL PROPERTY :
TRACEABLE THERETO,

                                                     :

$1,005,213.30 IN UNITED STATES CURRENCY
FUNDS PREVIOUSLY ON DEPOSIT AT       :
ALLIANCE BANK OF ARIZONA, IN ACCOUNT
NUMBER 7091051040, HELD IN THE NAME OF :
ALLIED SYSTEMS, INC., AND ALL PROPERTY

TRACEABLE THERETO,                                        :

$2,840,227.59 IN UNITED STATES CURRENCY                   :
FUNDS PREVIOUSLY ON DEPOSIT AT
CITIBANK, NA, IN ACCOUNT NUMBER                           :
201831195, HELD IN THE NAME OF ALLIED
WALLET, INC., AND ALL PROPERTY                            :
TRACEABLE THERETO,
                                                          :
$362,631.59 IN UNITED STATES CURRENCY
FUNDS PREVIOUSLY ON DEPOSIT AT                            :
CITIBANK, NA, IN ACCOUNT NUMBER
40022557694, AND ALL PROPERTY                             :
TRACEABLE THERETO,
                                                          :
$301,066.83 IN UNITED STATES CURRENCY
FUNDS PREVIOUSLY ON DEPOSIT AT                            :
CITIBANK, NA, IN ACCOUNT NUMBER
40048654822, AND ALL PROPERTY                             :
TRACEABLE THERETO,
                                                          :
$6,493.18 IN UNITED STATES CURRENCY
FUNDS PREVIOUSLY ON DEPOSIT AT                            :
CITIBANK, NA, IN ACCOUNT NUMBER
40050749247, AND ALL PROPERTY                             :
TRACEABLE THERETO,
                                                          :
            Defendants *in rem*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff United States of America, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, for its complaint alleges as follows:

## I. NATURE OF THE ACTION

1. In this action the United States of America seeks forfeiture of the following property:

   a.  $6,637,076.23 in United States currency funds previously on deposit at Goldwater Bank in Scottsdale, Arizona, in account

                number 160201, held in the name of Allied Wallet, Inc. ("Goldwater Account-1"), and all property traceable thereto,

    b.    $950,000 in United States currency funds previously on deposit at Goldwater Bank in Scottsdale, Arizona, in account number 160200, held in the name of Allied Wallet, Inc. ("Goldwater Account-2"), and all property traceable thereto,

    c.    $1,232,540.19 in United States currency funds previously on deposit at Alliance Bank of Arizona, in account number 8010200536, held in the name of Allied Systems, Inc. ("Alliance Account-1"), and all property traceable thereto,

    d.    $1,005,213.30 in United States currency funds previously on deposit at Alliance Bank of Arizona, in account number 7091051040, held in the name of Allied Systems, Inc. ("Alliance Account-2"), and all property traceable thereto,

    e.    $2,840,227.59 in United States currency funds previously on deposit at Citibank, NA, in account number 201831195, held in the name of Allied Wallet, Inc., ("Citibank Allied Wallet Account"), and all property traceable thereto,

    f.    $362,631.59 in United States currency funds previously on deposit at Citibank, NA, in account number 40022557694 ("Citibank Khawaja Account-1"), and all property traceable thereto,

    g.    $301,066.83 in United States currency funds previously on deposit at Citibank, NA, in account number 0048654822 ("Citibank Khawaja Account-2"), and all property traceable thereto,

    h.    $6,493.18 in United States currency funds previously on deposit at Citibank, NA, in account number 40050749247 ("Citibank Khawaja Account-3"), and all property traceable thereto,

(collectively, the "Defendant Funds" or the "Defendants *in rem*").

    2. The Defendant Funds are subject to forfeiture (a) under Title 18, United States Code, Sections 981(a)(1)(A) and 984 as property involved in actual or attempted money laundering transactions in violation of Title 18, United States Code, Section 1956(a)(2)(A), or as

3

property traceable to such property, (b) under Title 18, United States Code, Sections 981(a)(1)(C) and 984 as property that constitutes or is derived from proceeds traceable to the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955 and the illegal transmission of gambling information, in violation of Title 18, United States Code, Section 1084, and (c) under Title 18, United States Code, Section 1955(d), as property used in violation of Title 18, United States Code, Sections 1955(a) or as property traceable to such property.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Title 28, United States Code, Sections 1345 and 1355. Venue is proper pursuant to Title 28, United States Code, Sections 1355(b) and 1395(b) because some of the actions giving rise to forfeiture took place in the Southern District of New York.

4. The Defendant Properties are presently in the custody of the United States Marshals Service ("USMS").

## II. STATEMENT OF FACTS

5. This action arises out of an investigation of illegal internet gambling businesses which, although typically based offshore, predominantly serve players based in the United States. These gambling businesses offer "real money" casino games, poker, and sports betting to United States players, in violation of multiple federal criminal statutes, including but not limited to 18 U.S.C. § 1084 (making it unlawful to use a wire in connection with placing a bet or wager), § 1955 (making it illegal to operate an illegal gambling business) and §§ 1956 and 1957 (money laundering).

6. Although illegal internet gambling companies typically keep their computer servers, management, and support staff offshore, they must rely on the United States financial system both to obtain money from gamblers and to pay those gamblers who wish to withdraw funds from the online gambling companies. However, because United States financial institutions generally refuse to handle financial transactions that they know to be related to internet gambling, the offshore internet gambling companies and the payment processors who serve them must, as a matter of course, make false representations to United States financial institutions in order to conduct these transactions.

7. The leading internet gambling companies hire processing companies who have the ability to withdraw funds directly from United States consumers' bank accounts through a process known as the Automated Clearinghouse (or "ACH") system. The ACH system, which is administered by the Federal Reserve, allows for fast and efficient electronic funds transfers to and from individuals' checking accounts through "e-checks" or "electronic checks." Payment processing companies with access to the ACH system can take money from individual consumer bank accounts (*i.e.* debit the consumer's account) and route it to gambling companies and transfer money from the gambling companies into individual checking accounts to pay winnings (*i.e.* credit the consumer's account). Typically, a gambler simply logs onto the web site of an internet gambling company and chooses "e-check" or some similarly described option and enters his or her United States bank account information to complete these transactions. The gambling companies often rely on these payment processors with access to the ACH system because major credit card companies make it difficult for the United States residents to fund gambling transactions with credit cards.

5

8. Between January 2009 and May 2009, funds constituting proceeds of operating an illegal gambling business and the illegal transmission of gambling information were deposited into Goldwater Account-1 in an amount greater than the value of the Defendant Funds. These funds are traceable to Pokerstars, an online gambling company based in the Isle of Man, and other offshore online gambling companies. They include proceeds of the illegal transmission of gambling information and operating an illegal gambling business. Some of these funds are traceable to wire transfers from outside the United States. These transfers were made by individuals and entities who knew that (a) the funds involved represented the proceeds of the illegal transmission of gambling information and operating an illegal gambling business, (b) the transfers were made in order to promote the carrying on of an illegal gambling business and (c) the transfers were designed in part to conceal or disguise the nature, location, source, ownership and control of the proceeds of the illegal transmission of gambling information and operating an illegal gambling business.

9. During this same time period, funds in an amount greater than the value of the Defendant Funds were debited from the bank accounts of online gamblers who were using the Pokerstars.com website, and other websites, to engage in online gambling. Some of the debited accounts were located in the Southern District of New York. These transfers, executed through the ACH system, represented payments to engage in online gambling.

10. During this same time period, funds in an amount greater than the value of the Defendant Funds was credited to the bank accounts of online gamblers who were using the Pokerstars.com website, and other websites, to engage in online gambling. Some of these credited accounts were based in the Southern District of New York. These transfers, executed

6

through the ACH system, represented payments, often winnings from online gambling, from illegal gambling businesses to players located in the United States who engaged in online gambling.

11. During this same time period:

    a. an amount greater than $950,000, representing proceeds of money laundering transactions, operating an illegal gambling business, and the illegal transmission of gambling information was transferred, directly or indirectly, from Goldwater Account-1 to Goldwater Account-2;

    b. an amount greater than $1,232,540.19, representing proceeds of money laundering transactions, operating an illegal gambling business, and the illegal transmission of gambling information was transferred, directly or indirectly, from Goldwater Account-1 to Alliance Account-1;

    c. an amount greater than $1,005,213.30, representing proceeds of money laundering transactions, operating an illegal gambling business, and the illegal transmission of gambling information was transferred, directly or indirectly, from Goldwater Account-1 to Alliance Account-2;

    d. an amount greater than $5,350,227.59, representing proceeds of money laundering transactions, operating an illegal gambling business, and the illegal transmission of gambling information was transferred, directly or indirectly, from Goldwater Account-1 to Citibank Allied Wallet Account;

    e. an amount greater than $362,631.59, representing proceeds of money laundering transactions, operating an illegal gambling business, and the illegal transmission of

gambling information was transferred, directly or indirectly, from Goldwater Account-1 to Citibank Khawaja Account-1;

    f. an amount greater than $301,066.83, representing proceeds of money laundering transactions, operating an illegal gambling business, and the illegal transmission of gambling information was transferred, directly or indirectly, from Goldwater Account-1 to Citibank Khawaja Account-2;

    g. an amount greater than $6,493.18, representing proceeds of money laundering transactions, operating an illegal gambling business, and the illegal transmission of gambling information was transferred, directly or indirectly, from Goldwater Account-1 to Citibank Khawaja Account-3.

    12. On or about June 2, 2009, a Magistrate Judge in the Southern District of New York found, based upon a sworn affidavit submitted by a Special Agent of the Federal Bureau of Investigation, that there was probable cause to believe that all funds on deposit in Goldwater Account-1 and Goldwater Account-2 were subject to seizure and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 981(b), 984, and 1955, and issued a seizure warrant authorizing a law enforcement officer to seize those funds, as well as certain other funds. A Special Agent of the Federal Bureau of Investigation seized those funds, in the amount listed in paragraph 1 above, and they are now in the custody of the United States Marshals Service.

    13. On or about June 9, 2009, a Magistrate Judge in the Southern District of New York found, based upon a sworn affidavit submitted by a Special Agent of the Federal Bureau of Investigation, that there was probable cause to believe that all funds on deposit in Alliance Account-1 and Alliance Account-2 were subject to seizure and civil forfeiture pursuant to 18

U.S.C. §§ 981(a)(1)(A) and (C), 981(b), 984, and 1955, and issued a seizure warrant authorizing a law enforcement officer to seize those funds. A Special Agent of the Federal Bureau of Investigation seized those funds, in the amount listed in paragraph 1 above, and they are now in the custody of the United States Marshals Service.

14. On or about June 9, 2009, a Magistrate Judge in the Southern District of New York found, based upon a sworn affidavit submitted by a Special Agent of the Federal Bureau of Investigation that there was probable cause to believe that all funds on deposit in Citibank Allied Wallet Account were subject to seizure and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 981(b), 984, and 1955, and issued a seizure warrant authorizing a law enforcement officer to seize those funds. A Special Agent of the Federal Bureau of Investigation seized those funds, in the amount of $5,350,227.59, and they are now in the custody of the United States Marshals Service.

15. On or about June 24, 2009, a Magistrate Judge in the Southern District of New York found, based upon a sworn affidavit submitted by a Special Agent of the Federal Bureau of Investigation that there was probable cause to believe that all funds on deposit in the Citibank Khawaja Account-1, Citibank Khawaja Account-2, and Citibank Khawaja Account-3 were subject to seizure and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 981(b), 984, and 1955, and issued a seizure warrant authorizing a law enforcement officer to seize those funds, as well as certain other funds. A Special Agent of the Federal Bureau of Investigation seized those funds, in the amount listed in paragraph 1 above, and they are now in the custody of the United States Marshals Service.

## III. COUNT ONE

### Forfeiture Under Title 18, United States Code, § 981(a)(1)(A)

16. The allegations set forth in paragraphs one through 13 of this Verified Complaint are repeated and re-alleged as if fully set forth herein.

17. Title 18, United States Code, § 981(a)(1)(A) subjects to forfeiture "[a]ny property real or personal involved in a transaction or attempted transaction in violation of section . . . 1956 . . . of this title, or any property traceable to such property."

18. Title 18, United States Code, Section 1956, commonly known as the "money laundering" statute, provides in subsection (a)(2) that "[w]hoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer . . . funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States–

(A) with the intent to promote the carrying on of specified unlawful activity; or

(B) knowing that the . . . funds involved in the . . . transmission or transfer represent the proceeds of some form of unlawful activity and knowing that such . . . transmission or transfer is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity"

shall be guilty of a crime.

28. The term "specified unlawful activity" is defined in Title 18, United States Code, Section 1956(c)(7)(A) as "any act or activity constituting an offense listed in Section 1961(1) of this title." 18 U.S.C. § 1961(1) lists as an offense, "section 1955 (relating to the prohibition of illegal gambling businesses)."

29.     Title 18, United States Code, Section 984 provides, in pertinent part, that

(a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or precious metals –

(A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

(B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

(b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

30. Because the Defendants *in rem* were involved in, or traceable to transactions involved in, transactions transferring funds to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of an illegal gambling business by individuals and entities who knew the transfers represented the proceeds of unlawful

activity, to wit operating an illegal gambling business, and were done to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of operating an illegal gambling business, the Defendants *in rem* are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and 984.

## IV. COUNT TWO

### Forfeiture Under Title 18, United States Code, § 981(a)(1)(C)

31. The allegations set forth in paragraphs one through 13 of this Verified Complaint are repeated and re-alleged as if fully set forth herein.

32. Under 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in Section 1956(c)(7) of [Title 18]), or a conspiracy to commit such offense," is subject to forfeiture to the United States.

33. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense under 18 U.S.C. § 1961(1). 18 U.S.C. § 1961(1) lists as offenses "section 1084 (relating to the transmission of gambling information)" and "section 1955 (relating to the prohibition of illegal gambling businesses)."

34. The Defendants *in rem* are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 984 because they constitute or are derived from proceeds traceable to offenses constituting specified unlawful activity, to wit, the transmission of gambling information in violation of 18 U.S.C. § 1084 and the operation of an illegal gambling business in violation of 18 U.S.C. § 1955.

## V. COUNT THREE

**Forfeiture Under Title 18, United States Code, § 1955(d)**

35. The allegations set forth in paragraphs one through 13 of this Verified Complaint are repeated and re-alleged as if fully set forth herein.

36. Under 18 U.S.C. § 1955(d) "[a]ny property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States." Section 1955(a) states that "[w]however conduct, finances, manages, supervises, directs, or owns all or part of an illegal gambling business" is guilty of a crime.

37. The Defendants *in rem* are subject to forfeiture pursuant to 18 U.S.C. § 1955(d) and 984 because they were used to conduct an illegal gambling business.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the defendant currency and that all persons having an interest in the defendant currency be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendants *in rem* to the United States of America for

disposition according to law and that this Court grant plaintiff which further relief as this Court may deem just and proper together with the costs and disbursements in this action.

Dated: New York, New York
      August 16, 2010

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York
                              Attorney for the Plaintiff
                              United States of America

By: _____
        JEFFREY ALBERTS
        300 Quarropas Street, Third Floor
        White Plains, NY 10601
        (914) 993-1965

## VERIFICATION

STATE OF NEW YORK            )
COUNTY OF NEW YORK           )
SOUTHERN DISTRICT OF NEW YORK )

Royal Pollitt, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and, as such, has responsibility for the within action, that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his own knowledge, information, and belief.

The sources of the deponent's information and the grounds for his belief are official records and files of the United States Government.

Dated: New York, New York
       August 16, 2010

_____
Royal Pollitt
Special Agent
Federal Bureau of Investigation

Sworn to before me this
16 day of August, 2010

_____
Notary Public

VIVIANA SERRANO
Notary Public, State of New York
No. 01SE6092363
Qualified in Bronx County
Commission Expires May 19, 2012

15